## In re IVEL DISPLAYS, Inc.

## PEOPLE OF STATE OF NEW YORK v. IRVING TRUST CO.

### No. 246.

Circuit Court of Appeals, Second Circuit.
Jan. 7, 1935.

John J. Bennett, Jr., Atty. Gen. (Robert P. Beyer, Asst. Atty. Gen., of counsel), for claimant-appellant.

Palmer, Barber, Matters & Merritt, of New York City (Walter H. Merritt, of New York City, of counsel), for respondent-appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The state of New York asserts a lien upon the assets of Ivel Displays, Inc., a bankrupt, for franchise taxes for the years commencing November 1, 1930, November 1, 1931, and November 1, 1932, amounting altogether to $1,260.49 and interest, in priority to expenses of administration and wage claims.

In the very casual record before us we are not informed of the date when the petition in bankruptcy was filed or the adjudication was entered, but an examination of the proceedings in the District Court shows that the petition was filed on January 12, 1933, and the adjudication was made on January 27 succeeding. The court below apparently held that the state of New York had not acquired a lien, and, upon that hypothesis, under section 64b of the Bankruptcy Act, as amended (11 USCA § 96 (b), directed the payment of expenses of administration and wage claims prior to the taxes due the state.

Section 209 of the New York Tax Law (Consol. Laws N. Y. c. 60) provides that every corporation shall annually pay in advance a franchise tax for the year beginning November 1st next succeeding the 1st of July to be computed by the tax commission upon the basis of its entire net income, as defined in subdivision 3 of section 208 for the calendar year next preceding. Section 211 provides that the corporation shall file its return before July 1st, or within thirty days after reporting its net income to the United States Treasury. Section 219-a requires that the tax commission shall audit and state the account of each corporation known to be liable to a tax, shall compute the tax thereon, and proceed to collect the same. Section 219-b provides that notice of the tax assessment shall be sent by mail to the address given in the return, and 219-c that the tax shall be paid to the commission on or before the 1st day of January of each year, or within thirty days after notice thereof has been mailed to the taxpayer, if it is given subsequent to the 1st day of December of the year for which the tax is imposed. Section 219-c likewise says each such tax "shall be a lien and binding upon the real and personal property of the corporation liable to pay the same until the same

is paid in full." If the tax is not paid within thirty days after the same becomes due, it is provided by section 219-c that the tax commission issue a warrant to the sheriff for its collection, who shall file a copy thereof with the clerk of the county, to be docketed by the latter in his judgment docket. Upon such docketing, the amount of the tax is to become a lien on the real and personal property of the corporation.

While it is altogether probable that each tax was assessed and notice thereof was sent to the taxpayer in November of the year for which it was to be paid so that it became due on or before the 1st of January following, we cannot learn from the record whether this was actually the fact. If these taxes were assessed and notices thereof were given before the date of the filing of the petition in bankruptcy, they became liens on the assets of the bankrupt's estate and had priority over wage claims and general expenses of administration, Dunn v. Interstate Bond Co., 68 F.(2d) 364 (C. C. A. 5); In re Brannon, 62 F.(2d) 959 (C. C. A. 5), though not over the reasonable expense of preserving the property and bringing the fund into court, Dunn v. Interstate Bond Co. (C. C. A.) 68 F.(2d) 364, 365. In the case of In re Century Steel Co., 17 F.(2d) 78, we held such a tax superior to the lien of a judgment though no warrant had been issued to the sheriff or docketed in the office of the county clerk under section 219-e of the New York Tax Law. The recent decision of the New York Court of Appeals in Engelhardt v. Alvino Realty Co., 248 N. Y. 374, 162 N. E. 287, seems to be in accord.

In New York v. Maclay, 288 U. S. 290, 53 S. Ct. 323, 77 L. Ed. 754, where priorities between the United States under Rev. St. § 3466 (31 USCA § 191) and the state of New York were involved and the right of the United States to payment before the state of New York depended on whether the latter had obtained a specific lien for franchise taxes due it, the opinion of Cardozo, J., laid stress on whether the taxes had been "assessed or liquidated" before the petition in bankruptcy was filed. If assessment and notice of the tax assessed had taken place before the petition was filed, a specific lien must have arisen that would meet the test laid down by Justice Cardozo in New York v. Maclay, 288 U. S. 290, 53 S. Ct. 323, 77 L. Ed. 754, and by Taft, C. J., in Spokane County v. United States, 279 U. S. 80, 49 S. Ct. 321, 73 L. Ed. 621.

In view of the condition of the record before us, we think that we ought not to assume that the taxes were all assessed or liquidated prior to the date of bankruptcy. Upon a rehearing the state should prove just when each tax was assessed or liquidated. To the extent that each tax was so assessed or liquidated before bankruptcy, it ripened into a lien having priority over wage claims and ordinary expenses of administration. To the extent that any claim was not thus assessed or liquidated before bankruptcy, it would be subordinate to expenses of administration and wage claims.

The order appealed from should be reversed, and the proceeding remanded, with direction to determine to what extent the franchise taxes were assessed or liquidated before the filing of the petition in bankruptcy and thereafter to marshal assets and direct payments in accordance with the views expressed in this opinion.