**UNITED STATES of America,**
**Plaintiff,**

v.

**FABRICATED AIR PRODUCTS COMPA-**
**NY, Inc., Leona Mancil, Orange Nation-**
**al Bank, Thermal Supply Company, De-**
**fendants.**

**Civ. A. No. 4282.**

United States District Court
E. D. Texas,
Beaumont Division.
June 22, 1962.

Wm. Wayne Justice, U. S. Atty., Tyler, Tex., for plaintiff.

Leyton Jenkins, Dunn & Jenkins, Orange, Tex., Paul R. Owens, Sexton & Owens, Orange, Tex., for defendants.

FISHER, District Judge.

This is an action in which the United States of America, hereinafter referred to as Plaintiff, seeks a recovery of certain assessed and outstanding taxes, penalties and accrued interest against Defendant, Fabricated Air Products Company, Inc., hereinafter referred to as Fabricated, in the total amount of $3,984.83, plus interest as provided by law, and attempts to enforce its tax liens against personal property, to wit, chattel mortgages held by the Orange National Bank, hereinafter referred to as the Bank, and Thermal Supply Company, hereinafter referred to as Thermal. The taxpayer, Fabricated, does not contest the tax liability to the Plaintiff, but, joined by the other defendants, denies insolvency and voluntary assignment of assets which would invoke Section 3466 of the Revised Statutes; further, defendants Thermal and the Bank, deny that the indebtedness owing to them was in the nature of promissory notes and accounts receivables, asserting further that they are secured creditors as evidenced by chattel mortgages properly and timely recorded and therefore, have a superior and prior lien to that of the plaintiff.

In October or November, 1957, Fabricated entered into a construction contract with defendant, Leona Mancil, hereinafter referred to as Mancil, to install certain heating and air-conditioning equipment in a cafeteria. The approximate cost of this work was $9,000.00 and was to be paid in cash within thirty (30) days after completion. The installation was completed on or about February 17, 1958, thereby obligating defendant Mancil to pay for the installation within thirty (30) days from that date.

Fabricated, by three separate thirty (30) day promissory notes, borrowed $6,-132.00 from the Bank to purchase the air-conditioning equipment and pay for the labor needed for the completion of this job. One note for $3,432.00 was advanced to pay for the air-conditioning equipment; one note for $1,400.00 was advanced to pay for labor; and the third note for $1,200.00 was advanced to pay for labor.

Thermal supplied material only to Fabricated for this job, totaling approximately $3,800.00.

On January 3, 1958, Mancil executed a chattel mortgage and vendor's lien note to Fabricated for $3,811.76, which amount equaled the materials supplied by Thermal, plus interest.

On January 17, 1958, Mancil and Fabricated jointly executed a chattel mortgage and note to the Bank in the sum of $7,066.08, which amount represented the total of the three loans from the Bank to Fabricated, plus interest. This chattel mortgage and note was duly filed of record in the Chattel Mortgage Register, Orange County, Texas, on February 4, 1958.

On February 14, 1958, Fabricated made an assignment to Thermal of the chattel mortgage and note in the amount of $3,811.76 executed by Mancil to Fabricated on January 3, 1958. This chattel mortgage and note was duly filed of record in the Chattel Mortgage Register, Orange County, Texas on February 14, 1958.

The Commissioner of Internal Revenue, on the various dates set forth in the following schedule, under the heading, "Date of Assessment", made jeopardy assessments, pursuant to Section 6862 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 6862, against defendant Fabricated for withholding and federal unemployment taxes, penalties and accrued interest. The total of each assessment is itemized in the schedule under the heading "Amount Assessed and Outstanding." Concurrently with these assessments, notice thereof was given to and demand for payment was made upon the defendant taxpayer, Fabricated. On

the dates specified under the heading, "Date Notice of Lien", (Form 668) was filed for the corresponding assessments in Orange County, Texas.

## SCHEDULE

| Type of Tax and Taxable Period | Amount Assessed and Outstanding | Date of Assessment | Date Notice of Lien Filed |
|---|---|---|---|
| Withholding (3rd Qtr. 1957) | $ 41.51 | 1–31–58 | 6–4–58 |
| Withholding (4th Qtr. 1957) | 2,738.65 | 6–11–58 | 6–16–58 |
| Withholding (1st Qtr. 1958) | 313.65 | 6–11–58 | 6–16–58 |
| Federal Unemployment Tax (1957) | 891.02 | 6–11–58 | 6–16–58 |
| TOTAL | $3,984.83 | | |

The defendant taxpayer neglected and refused to pay any part of these assessments.

The plaintiff contends that Revised Statute, § 3466, 31 U.S.C.A. § 191, is applicable in this case and gives the United States a priority superior to any interest claimed in the chattel mortgages and notes by the Bank and Thermal. Revised Statute, § 3466 provides:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed." 31 U.S.C.A. § 191.

Section 6321 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 6321 provides:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

Section 6323 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 6323 provides:

"(a) Invalidity of lien without notice.—Except as otherwise provided in subsection (c), the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser or judgment creditor until notice thereof has been filed by the Secretary or his delegate * * * [etc.]."

This Court must now decide if Revised Statute, § 3466 (31 U.S.C.A. § 191) is applicable to the facts above presented to give the plaintiff a priority over the chattel mortgagee defendants who perfected their chattel mortgage liens under Texas law prior to the time the Plaintiff

perfected its lien under Sections 6321 and 6323 of the Internal Revenue Code of 1954.

For Revised Statute, § 3466 to be applicable, (a) there must be an insolvent debtor, (b) who makes a voluntary assignment of his assets.

Whether the plaintiff is entitled to preferential status given it under Section 3466 depends upon Fabricated being insolvent, within the meaning of the Statute, on January 17, 1958 and February 14, 1958, the dates of said assignments of chattel mortgages to the Bank and to Thermal; and if it was, whether the assignment or transfer to the Bank and to Thermal constituted a voluntary assignment of assets.

▪ Discussing the issue of insolvency first, a person shall be deemed insolvent within the provisions of this Act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder or delay his creditors, shall not at a fair valuation, be sufficient in amount to pay his debts. United States v. Oklahoma, 261 U.S. 253, 43 S.Ct. 295, 67 L.Ed. 638; 11 U.S.C.A. § 1(15). Further, a debtor is insolvent within the meaning of the Statute if, not having sufficient property to pay all his debts, he either makes a voluntary assignment thereof or commits an act of bankruptcy. United States v. Gotwals, 10 Cir., 156 F.2d 692.

▪ There is evidence that Fabricated was unable to pay its debts as they became due in the usual course of business. But this is not the test. The mere inability of the debtor to meet his obligations does not constitute insolvency within the meaning of Section 3466. The insolvency which entitles the United States to a preference over creditors can only be established where a debtor, having insufficient property to pay all his debts, makes an assignment of all his property. United States v. Oklahoma, supra.

▪ This Court now concludes that the evidence adduced by the plaintiff is insufficient to show Fabricated had more liabilities than assets at the time in question and was insolvent as that term is defined under the cases interpreting Section 3466, 31 U.S.C.A. § 191.

Assuming, arguendo, that Fabricated was insolvent, it is the opinion of this Court that Fabricated did not make a voluntary assignment of assets, within the meaning of Section 3466. The assets in question were not in the nature of accounts receivables or unsecured promissory notes as contended by the plaintiff.

▪ A voluntary assignment has been defined as a transfer without compulsion of law by a debtor of his property to an assignee in trust to apply the same or the proceeds thereof to the payment of his debts and to return the surplus, if any, to the debtor. United States v. Gotwals, supra. The assignments in this case were not made to an assignee in trust to pay unsecured debts, but were actually made for the purpose of securing the payment of materials and labor necessary for the completion of a particular and specific installation, namely, the Mancil job, which indebtedness was not an account receivable or an unsecured promissory note but was evidenced by a chattel mortgage properly filed and recorded several months prior to the plaintiff's assessment and notice of liens.

Since the chattel mortgage liens of the Bank and Thermal were acquired in the ordinary course of business, were not given with the intent to hinder, delay, or defraud any creditors, and were recorded pursuant to Texas law some five (5) months prior to the time the plaintiff made its assessments and gave notice of its liens, Sections 6321 and 6323 of the Internal Revenue Code of 1954, would apply to give the defendants, the Bank and Thermal, a superior lien over the tax lien of the plaintiff. United States v. Atlantic Municipal Corporation, 5 Cir., 212 F.2d 709; Exchange Bank and Trust Company v. Tubbs Manufacturing Company, 5 Cir., 246 F.2d 141.

To hold otherwise would place an undue burden upon lending institutions not contemplated by Revised Statute, § 3466. In United States v. Wilkinson (1878; c. c.), Fed.Cas.No.16,695, 5 Dill. 275, the Court, in answering the question whether the priority of United States so impresses itself upon the property of the debtor as to create a lien thereon observed that if that be the effect given to the Statute, then every person dealing with one who is or may become indebted to the United States does so at his peril; that all property of a debtor of the United States would be affected by possible liens, the existence and extent of which no one could well ascertain.

Judgment will be entered for the defendants, with costs.